Case number 19-3908, Walter Martinez v. Christopher LaRose et al. Oral argument not to exceed 15 minutes per side. Mr. Lyonsburg for the appellant. Good morning, Your Honors. May it please the Court. Andrew Lyonsburg for the appellant. Walter Millar Martinez. As the Court is aware, Mr. Millar has been detained by the government without a bond hearing, that is, without an individualized determination of whether his detention serves the legitimate purposes of the immigration detention statutes for the past 25 months now. And as we've explained, that detention is both contrary to the statutory scheme and to fundamental due process principles. Before I begin, I want to clarify quickly where this case stands because it's slightly different than when we filed the blue brief. Proceedings in the BIA are now finished. They've denied our motion to reopen. And so under our theory of the case, the reason why we are not in the Section 1231 removal period is now the stay that this Court has entered in the merits review. But everything we've said is still important and still relevant, I think, for two reasons, one practical and one legal. The practical reason is that the merits panel in this case has before it the government's motion to remand the case back to the BIA for some clarification, and so it could very well be that we would be back in a position where, under our theory, there is no administrative finality under Romanet I. Is that set for a time for the argument? No, it's not. There's been no briefing. The government has moved to hold briefing and abeyance pending that motion to remand. So essentially the whole case has to proceed. But the legal reason why everything still matters is our position has always been that these two statutes have to work together, Section 1226 and Section 1231. And to take a step back, I think the government would agree how the statutes work together in the case of normal removal proceedings, that is, not reinstatement proceedings, which is while proceedings are pending before the agency, whether that be the immigration judge or the BIA, Section 1226 governs and most aliens will be afforded a bond hearing, that is, bond is available unless the category of criminal aliens under 1226C. Then once those proceedings are finished in the agency, unless the court orders it stay, detention authority moves over to 1231, at which point there is a 90-day removal period during which the attorney general must remove the alien. And detention during that 90-day period is mandatory, the implication being that the mandatory nature of the detention is to serve the imminent removal that is about to happen. Didn't the order of removal become final in 2008? So I think a couple of points about that. The first is an order of removal, once executed, cannot just be executed again without being reinstated. That is, reinstatement is not- I thought reinstatement automatically occurred in, was it 2017 when you reentered? I'm sorry. 2017. Reinstatement did not automatically occur, and I would cite- That's all right. Just explain to me what happened then. Sure. So the government instituted reinstatement proceedings, and although those proceedings are fairly minimal, they are required in order for the prior removal order to become effective against this person. Isn't it effective against this person now, and that's how the withholding comes? Maybe I'm thinking about it wrong. I think of the removal order now as final. So he is removable, and then the question he's seeking withholding on is, don't remove me to El Salvador, but let's say we had an agreement with Mexico, and we could send him there. He'd still be removable. If he won on the withholding, it would just be we wouldn't send him to El Salvador. That's correct, but the distinction between 1226 and 1231 is not about removability, and I think that's an important point, and we talk about this in our briefs. If Congress had meant for 1226 to stop applying once there was a determination that the noncitizen is removable, it would have said that, and we know that because it says that elsewhere in the INA and elsewhere in provisions enacted in the same act as Section 1226. What it said instead is that it applies until, quote, pending a decision on whether the alien is to be removed, and we think that goes to a practical question of whether, in fact, is there authority to remove this person, legal authority, or is there a legal impediment that stops the removal from occurring? And I think that's- And is there a legal impediment right now? Right now the legal impediment is this court stay. So that's what you're saying, the court stay has effect. Yes, so our position is that while proceedings were pending in the agency, the legal impediment was that the reinstatement proceeding was not yet administratively final, and so the government did not have authority at that time to lawfully remove him. Are you saying that this doesn't apply until all chances of appeal and everything have gone? In terms of judicial appeal- Like asking for stays and going to the Supreme Court and all that, so 1331 doesn't kick in until such time as everything's finished. Judicially, only to the extent that the Court of Appeals issues a stay. Okay, so if this court had not issued a stay, I would agree that 1231 would be effective right now. So we have a stay that the government sought that is determining which of the two statutes applies. We sought the stay of removal. The government has- I thought the government sought the stay of the appeal, or a stay pending the resolution of the motion to remand to the BIA. Yes, that's correct. And I may not have phrased all that exactly right. I may have thrown you off, thrown myself off. That's exactly right. But I would also note that the government didn't oppose the stay in this case. They agreed to it. So how do you make use of 1231A5? Because that basically says that the alien is not eligible and may not apply, and I'm just reading it, for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry. Sure. Well, first of all, the Supreme Court has said that that does not preclude the kind of relief that he's seeking here, withholding only relief. Right. I understand that. And in terms of the timing of the finality- That seems to make it final, at least in my mind. Well, it's not final until the reinstatement proceedings are themselves final, because that is what determines whether this removal order applies to this person. Explain that to me, because let me tell you the way I'm thinking of it, and then you should tell me why I'm wrong. So when I read that, what I see is he's reentered illegally after having been removed, and he's not eligible for relief under this chapter, and he shall be removed. So under this chapter, he's a removed person. And so I get why he can seek withholding relief, but I view that as something totally different. So importantly, Section A-5, those results occur once the Attorney General has made the determination that in fact this is the person that is in fact subject to that prior removal order, and that's played out in the regulations. I thought that's already been made in this case. So it's been made in this case, but those reinstatement proceedings are themselves not final until the- This says they are final. Well, the courts have held, I think a significant amount of courts have held it, that those reinstatement proceedings are not final for purposes of judicial review until the withholding-only proceedings are also finished, and then they go up to the Court of Appeals together. So finality of the reinstatement proceedings waits for- But you can't get review of this, right? You cannot get review of the underlying removal order. You cannot collaterally attack it. You can get review- Oh, go ahead. I'm sorry. Of the reinstatement to say, one, I am not the person described in the prior removal order. Two, I did not in fact reenter illegally. My reentry was legal. He's not- Is he contesting either of those things? No, he is not. But the availability of judicial review- It's very limited, and he's not seeking it. And so why- I still don't understand why this isn't final. Well, I guess, to be clear, in this case, administrative finality has happened. Okay. I'm not contesting that. I'm talking about- I don't understand why that doesn't put it into the 1231. Because of this court's stay under 1231 A1 v. Romanet II, the court has, in the merits proceedings, stayed the removal. And under the plain language of Romanet II, that stops the removal period from occurring. And this court held in the Bejani case that we talk about that- But that's not- I mean, I don't- If the removal order is judicially reviewed and if a court orders a stay of removal of the alien, the date of the court's final order- Yes. But if the- The key clause is if the order is judicially reviewed, the removal order, and we all agree it's not being judicially reviewed. Importantly, Your Honor, that was exactly the same in Bejani. What was being reviewed in Bejani was the reinstatement order, which is the same thing that's being reviewed in the merits proceedings. The court in Bejani said- What's the difference between reinstatement and withholding? So the way it works is that those are- Under FARA, which is the Foreign Affairs Restructuring Act, the review of those two things has to happen together. And so- Right, but FARA didn't repeal- I mean, FARA can't repeal 1231A5. Well, it can't repeal it, but it is a more specific enactment that takes precedence over it. And, you know, as the Supreme Court has said, those proceedings, withholding-only proceedings, are available notwithstanding A5. You want to get to your constitutional- I do. I have very little time left. I think we've demonstrated an overwhelming amount of case law that stands for the proposition that- If we find 1231 applies, can I just ask you a quick question? In a post-Jennings world, we can't read a bond requirement into it, right? That's correct. We're talking about a constitutional due process argument, not a constitutional avoidance argument. And our point is that many courts have held that at a certain point, prolonged detention becomes unconstitutional unless there's a bond hearing to determine whether the purposes of the immigration detention statutes are, in fact, certain. But he is removable in the sense, unlike in Zavitas, El Salvador will take him back, right? May I answer the question, Your Honor? Yeah, you can answer. El Salvador, I think, it hasn't- they haven't issued him documents, but absent the withholding, I don't think there would be a practical impediment. Okay. My time has expired, so I will return on rebuttal. Good morning. May it please the Court. Brian Ward on behalf of the government. Your Honors, we ask that this Court affirm the decision of the District Court. The plain text of Section 1226 and 1231, as well as the statutory structure, compel the conclusion that individuals in petitioner circumstances fall under Section 1231. And petitioner's detention in this case falls well within the purpose of 1231 and the constitutional limits on 1231. So in terms of the first question, because it's a question of statutory interpretation, it's important to start with the text of the two statutes. Section 1226 applies pending a decision on whether an alien is to be removed. Section 1231, in contrast, applies to aliens who have been ordered removed. And we know that individuals with reinstated removal orders- What about your friend's point that when- that some courts have said that when withholding goes up, the kind of removal piece goes up with it. And so they're still technically being reviewed, so it's not final. Right, so this review of the withholding-only decision. So courts have read, just for purposes of preserving some form of judicial review over the withholding decision, they have read Section 1252B. That's the jurisdictional provision that covers petitions for review. They have read that as a matter of constitutional avoidance, to avoid suspension clause issues, to preserve some form of judicial review. Have read that to allow, through the reinstatement of the removal order, to allow that to create another round of jurisdiction to review only the withholding decision. So there's no review of the underlying removal order there. And none of those courts have said that that provides a way around 1231A5. Under 1231A5, that prior removal order, and it says it explicitly in the text, it's reinstated from its original date. It's not subject to reopening or review, so it cannot be reviewed as part of those. What about FARA, so as an abrogation of 1231A5? So again, I think, so FARA deals with the Convention Against Torture. And again, it's important to sort of distinguish here, I think, between what happens in the original removal proceedings and what happens following reinstatement. So in the original removal proceedings, you go before an immigration judge. You can raise a withholding claim, a claim under the Convention Against Torture. And in that process, as part of the review of the removal order you might get from the immigration judge or the Board of Immigration Appeals, you can also seek review through a petition for review up to this court of a Convention Against Torture claim. There's nothing in FARA that says it overrides and allows review of the underlying removal order. And so nothing about the narrow review that is preserved just as a matter of constitutional avoidance following reinstatement undermines this determination in the statute that once an alien reenters the United States, that removal order remains final. It's not subject to further review. Also, that line of cases that preserves judicial review through a petition for review of the decision in the withholding only proceedings, those cases say explicitly that they don't deal with the question at issue here. None of them dealt with what detention authority governs an individual, whether they fall under 1226 or 1231. And as a matter of constitutional avoidance, it should be read narrowly to the constitutional issue at issue in those cases, which is preserving judicial review of withholding only proceedings. It can't be read to apply in circumstances such as this. And we know this from Clark, even more recent cases dealing with matters of constitutional avoidance. Constitutional avoidance can only apply, and the court said this just recently in Jennings, can only be used in circumstances when there's two plausible readings of the statute and the court can use constitutional avoidance to adopt one plausible reading. Can I ask you about the constitutionality now that you're getting? Because I think what your friend is saying is he's saying, look, I'm not really arguing for constitutional avoidance. He said it in response. I'm arguing this is a due process violation. And what Zavita says is if the longer ‑‑ I haven't made sense of this. Maybe you can help me. The longer detention gets, the more problematic it gets. Right? So what happens if judicial review takes five years, which isn't unheard of with the bouncing back and forth? Can you just detain them that entire time without any due process concerns? So I think it's important to look at the individual circumstances of the case there. And what Zavita says is it directs individual due process determinations based on the factors of an individual case. When you're looking at factors of the individual case, what's the role of, say, our court versus the role of the judicial officer who conducts the bond hearing? If we said a bond hearing was required, wouldn't the judicial officer who's conducting the hearing be the one to consider whether the factors here pointed toward release or detention? Yes, Your Honor. Yes, what? So yes, it can be determined in a bond hearing or by a court in a habeas proceeding. The problem is that there is no mention whatsoever in Section 1231 of a bond hearing, and the court has just recently said it. Well, but, you know, due process and 1231 can coexist. And do coexist. That's true, Your Honor. But the court just said in Jennings that Congress has made the categorical determination that certain categories of aliens should not get a bond hearing and that courts cannot read. But Congress doesn't determine what the parameters of the due process clause require. I mean, that's just not within congressional power. Certainly, Your Honor. I mean, I would hope that Congress would take that into account in legislation, but that's not the entity within our system who makes that call. Correct, Your Honor. I agree with that. But I think the question is then what would the remedy be? Would it be a court through habeas determining whether the limits of due process have been reached, or would it be in a bond hearing? And the Supreme Court has said that it can't be a bond hearing in statutes where Congress hasn't read in a bond hearing. So your belief in a habeas proceeding would be a bond hearing, could be a bond hearing. Not necessarily. So I want to get back to the point of Zavidas. So Zavidas squarely addresses the issue here. And what Zavidas says is it set the constitutional limits on detention, and it says if those limits are reached, then the remedy is release. It's not ordering a bond hearing. It's that the individual should be released from detention. But it's important to consider what the court said were those constitutional limits on detention in Zavidas. It didn't say it was addressing prolonged detention, but it didn't say that as detention lengthens, that that alone is a reason to find that detention under 1231 isn't constitutional. The point of Zavidas, what Zavidas says is that – Can I interrupt you? I'm sorry. Yes. Didn't it – I remember a sentence specifically. I can find it where Justice Breyer says as detention – he says something about six months, like six months being the benchmark. And then he says as detention gets longer, the constitutional concerns get more significant. Something like that. Yes, Your Honor, but I think it's important to look at why the detention is lengthening. So what Zavidas says is that the basic purpose of detention under Section 1231 is to ensure the individual's presence at the point of removal. And Congress can, in their cases going back to the 1800s when we cite this, Congress can determine that for a category of individuals that they need to be detained in service of removal proceedings and their removal. In Zavidas, the court even says it's possible that Congress could enact a statute that says – that requires indefinite detention, but it would have to do it in more – it would have to do it more directly than it does in this statute. It said what they thought Congress was trying to do in 1231 was – So what do we do with that? In other words, I totally agree with you. In a post-Jennings world, we can't read a bond requirement into 1231. But what if he's detained 20 years because it's taking forever between the agencies and the courts? I mean, what do we do with that? That's really what Judge Gibbons is getting at, which is what does the Due Process Clause tell us to do in that situation? Yes, Your Honor, and that's not this case. This case has not gone 20 years, and 20 years I think would present a different circumstance. I know, but I want to – Again, it would depend – At some point we've got to lay out a rule, right? I get that the Supreme Court hasn't given us a ton of help on this, but at some point we've got to come up with something. And we're now at 25 months. Yes, Your Honor, but the – And there's not any indication from this record that this matter is going to be resolved tomorrow. But the question, again, is why is it at 25 months? Or why is it at 20 years, right? So in Zavidas, the Supreme Court says that the reasonableness of detention must be assessed by considering the statute's basic purpose. The detention remains authorized by the Constitution so long as there is some significant likelihood of removal in the reasonably foreseeable future. And so it's a forward-looking remedy. Is this detention still in service of removing the individual? So in Zavidas, where there wasn't a pending claim, what happened there is final removal order, nothing continuing going on in any administrative agency or in the courts, and the government was trying to remove those aliens and tried country after country after country and could not find a country that would accept them. We don't have that situation here, do we? We don't have that situation here. And what the court said was happening there was it looks like there's going to be no country which will accept these people. So it doesn't look like this detention is in service of removal anymore because it doesn't appear the government will ever be able to remove this individual. It starts to look there like the time in detention is related to we're just going to detain this individual forever because there's no possibility that they will be removed. Here we don't have that circumstance. Petitioner returned to the United States. He had a final removal order. He was removed from the United States. He returned illegally. He has an order that says he has no entitlement to remain in the United States. Even if he was granted withholding, it would not lead to him having any status in the United States. So he has this order saying that you will be removed from the United States. What he is asking for is withholding a form of protection from having that removal order executed to El Salvador. His proceedings before the immigration judge were done within five months. Since then, even though it appears that it's ultimately not going to be a meritorious claim to not be removed to El Salvador again, what has been pending since then are just appeals. His initial petition for review was filed in 2018. He has sought a stay of those proceedings pending, seeking motions to reopen before the BIA. That was granted last May. So it's been since last spring that that appeal has just been pending because he has asked for it to be stayed and not reviewed. Can I ask, is the government's position as simple as this, that if he can be removed, in other words, if there are countries willing to accept him, and the delay is of his making because he doesn't want to go to the countries, there can never be a due process violation in detention? Does that make sense? Yes, Your Honor. I don't know that I would say there can never be a due process violation, but I would say there isn't one here. I get that. At what point, though, does it become? At what point? At the point when it seems like there's no possibility in the reasonable future that he will be removed, that his detention isn't in service of that removal order. And how does the court assess that? So here, the only barrier to his removal is his stay and pending petitions for review before this court. And as we've cited in our brief, a number of other courts have determined that just a pending appeal on a petition for review is not enough to find the removal is not reasonably foreseeable. I have a question. About section 1231, do you think it kicks in when the plaintiff here was caught back in this country after he'd been removed previously? Or is there some other piece of evidence that kicks it in? You see my question? So it kicks in when the removal order is reinstated. So what happens is... That's as quick as he got captured, I guess, or found. He got captured and the government determined that he had a prior removal order. He was the individual named in that removal order and that he had illegally reentered. A government official needs to make that determination, tell the petitioner they've made that determination, give him an opportunity to contest any of those determinations. He didn't contest any of those determinations. And so at that point, the removal order is reinstated. If it's reinstated at that point, if he's expressed a fear of returning to El Salvador again, if an asylum officer finds that fear is reasonable, meaning he could raise a plausible claim for withholding, then they'll put him in withholding-only proceedings because he already has a reinstated order. When did that order become final? So the removal order was final when it was originally executed back in 2008, and then it was reinstated the moment he returned in and returned to the United States illegally and was apprehended. So it was final at that point when it was reinstated, but also... What happens if he contests it? I know he didn't, but what happens then? Is it final or no? Then is it final? The government's position is that he would still have a final removal order at that point. But again, the only ways in which you can contest that is if he was arguing, I wasn't previously removed, I did not reenter illegally, basically arguing that I don't fall under this reinstatement provision because I'm not a person who has a previous final removal order, haven't been removed, and didn't reenter illegally. I see my time is up. If there are no further questions, we ask that the Court affirm the decision of the District Court. Thank you. I'm sure you reserved some time for rebuttal, but I didn't write it down. Yes, I did. Three minutes, Your Honor. Two, three. Just two points, one constitutional and one statutory. The constitutional point is that the Supreme Court in Zed Vetus absolutely did not hold that there can only be a due process violation when the sort of indefinite detention concerns that were present there are present. In fact, it said exactly the opposite. The quote is, quote, if removal is reasonably foreseeable, that is if we're not in the sort of indefinite detention situation, then, quote, the habeas court should consider the risk of the aliens committing further crimes as a factor. What do you mean by reasonably foreseeable? Because it's reasonably foreseeable in this case if you lose the withholding, he's being deported, right? And even if you don't lose the withholding, he could be deported. Yes, I think, as we say in our brief, reasonably foreseeable is not about whether it's going to happen. It's about the time in which it is going to happen. It's foreseeable in a reasonable period of time. But the point I would like to make is that even where removal is reasonably foreseeable, you still have to do a due process analysis about whether the detention serves the purposes of the statute, and those purposes are- Doesn't Congress get to make that call? I don't understand. Why do we have to do a due process analysis of that? Well, Congress has, I think, made a call. Well, I don't think Congress does get to decide the balance of due process, as Judge Gooding said. No, I'm not saying the balance of due process. I thought what you said is if it serves the purposes of the statute. Yes. Maybe I've misunderstood you. And so my point is if Congress says detention, we defer to that, and then we see if that could be a due process violation, right, whether it serves the purposes of the statute or not. Well, I think the important point is that in the individual case, detention will become unreasonable and thus unconstitutional if it no longer serves those purposes. And that is precisely the purpose of the bond hearing, is to determine whether for this person, are those legitimate purposes still being served or whether not. And Zedvitas is completely consistent with that. In fact, it says that that determination should be made. And turning quickly back to the statute, this Court's Bozziani decision, I think, settles the question of when a stay is granted. Even if the proceeding in which that stay is granted is technically a review of a reinstatement order rather than a removal order, that it still triggers the Romanet II in Section 1231 and therefore stops the removal period from accruing. I think the Court was clear that in that case what was being reviewed was the reinstatement order and not the underlying removal order, and I think that that controls the outcome here. So unless the Court has further questions, I would ask that you reverse the district court. We appreciate very much the argument both of you have given. I mean, there's a lot to think about and take into account in this case, and we'll attempt to do our best job of considering everything carefully. Thank you, Your Honor.